# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DENA MARTIN and ROY D. MARTIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-23-739-SLP |
| | ) | |
| ALLSTATE VEHICLE & PROPERTY, | ) | (District Court of Grady County, |
| INSURANCE COMPANY, JUD OWENS, | ) | Case No. CJ-2023-117) |
| and JUD OWENS AGENCY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

Before the Court is Plaintiffs' Motion to Remand and Brief in Support [Doc. No. 24]. Defendant Allstate Vehicle and Property Insurance Company (Allstate) has filed a Response [Doc. No. 25] and Plaintiffs have filed a Reply [Doc. No. 26]. Plaintiffs have also filed Notices of Supplemental Authority [Doc. Nos. 27, 28 and 29].[1] The matter is at issue. For the reasons that follow, Plaintiffs' Motion is GRANTED.

## I.   Introduction

This action, arises out of Allstate's denial of an insurance claim Plaintiffs made under a homeowners' replacement cost policy of insurance for wind/hail damage to their roof during a storm. Plaintiffs purchased the policy through Allstate's agents, Defendants Jud Owens and Jud Owens Agency, Inc. (collectively Owens).

Plaintiffs filed this action in the District Court of Grady County, State of Oklahoma.

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

Allstate removed the action on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Allstate acknowledges that Owens are non-diverse defendants, but contends they have been fraudulently joined in this action. Plaintiffs contest Allstate's assertion of fraudulent joinder and move to remand the action to state court.

## II.    <u>Allegations of the Complaint</u>[2]

Plaintiffs and Owens are citizens of the State of Oklahoma. Compl., ¶¶ 1, 4-5. Allstate is a foreign insurance company, licensed to do business in Oklahoma. *Id*., ¶ 3. Owens is a "captive agent" of Allstate and operates an Allstate agency in Cleveland County, Oklahoma. *Id*., ¶ 5.

Plaintiffs contacted Owens to obtain a "replacement cost policy" that would provide coverage for Plaintiffs' residence. *Id*., ¶¶ 2, 7. Plaintiffs were "particularly concerned about their roof and asked Owens to obtain for them full replacement cost coverage for their roof above and beyond what the base policy provided." *Id*., ¶ 8. Owens advised Plaintiffs they could obtain this coverage, but only by purchasing a "Roof Surface Extended Coverage Endorsement" at an increased premium. *Id*. He further advised that "the additional cost was worth it because it provided coverage that would *fully replace* their roof in the event of a covered loss, without conditions or exclusions." *Id*. (emphasis in original).

---

[2] Although Plaintiffs initiated this action with the filing of a Petition in state court, consistent with federal nomenclature and the Federal Rules of Civil Procedure, the court refers to the Petition in this case as the Complaint.

2

Owens served as the "first line of underwriting" for Allstate.  *Id*., ¶ 11.  Owens was required to inspect the roof, verify its condition and then calculate the "replacement cost values . . . by factoring in accurate information regarding the age, physical condition, and type of shingles of Plaintiffs' roof" utilizing "Allstate's valuation software."  *Id*., ¶¶ 10-11.  "[T]he roof's age, condition, and predominate surface materials were all factors that not only affected Plaintiff's eligibility to obtain replacement cost coverage for Plaintiffs' roof, but also dictated the calculation of the increased premium associated with this type of coverage."  *Id*., ¶ 12.  Owens "expressly conditioned Plaintiffs' insurance coverage" on the inspection.  *Id*.

Neither Owens nor Allstate advised Plaintiffs that their roof was ineligible for replacement cost coverage as requested.  *Id*., ¶ 13.  Instead, Owens specifically represented to Plaintiffs that their roof was in good condition, satisfied Allstate's guidelines and underwriting requirements and qualified for full replacement cost coverage.  *Id*., ¶ 14.  "Owens assured Plaintiffs that the amount of coverage he independently selected and calculated was accurate, correct, commensurate with actual reconstruction costs, and represented 100% of the Insured Property's insurance to value, such that Plaintiffs would be able to fully restore the Insured Property without incurring out-of-pocket expenses in the event of a loss."  *Id*., ¶ 19.

Owens then procured, and Allstate issued, Policy No. 815339333 (the Policy) to Plaintiffs.  *Id*., ¶ 15   The "Insured Property" included the roof.  *Id*.

On May 2, 2022, Plaintiffs' home was damaged by wind and hail from a storm.  *Id*., ¶ 23.  Plaintiffs timely notified Allstate of the storm damages.  *Id*.  On January 11, 2023,

Allstate's adjusters inspected Plaintiffs' property, including their roof and confirmed the home had sustained hail damage. *Id.*, ¶ 24. Allstate's claims representative, Kevin May, informed Plaintiffs that Allstate had identified "small hail impacts to some gutters and downspouts around Plaintiffs' home as well as some to the soft metal roof vents." *Id.* However, he further advised that Allstate "did not find evidence of wind or hail damages to the roof shingles" and explained: "'We found areas showing age related granule loss and blistering with no impacts to the shingles that are larger than the hail that fell during the recent storms and larger than what is identified on the soft metals.'" *Id.* Kevin May also advised Plaintiffs that "a large section of shingles on the left slope of the roof . . . were sliding down the slope" but that sliding shingles are the result of improper installation, not wind, hail or other sudden and accidental events. *Id.*, ¶ 25. Allstate prepared an estimate of $2,765.11 based on an actual cost value basis. *Id.*, ¶ 27.

Plaintiffs obtained an estimate from Acts 29 Roofing, LLC (Acts). Acts found far more damage and estimated the cost to be $19,732.00. *Id.* Acts informed Plaintiffs their roof should be totaled and replaced. *Id.*, ¶ 28.

On January 13, 2023, Allstate denied the claim and paid nothing. *Id.*, ¶ 28. Allstate attributed the damage to Plaintiffs' shingles to "age related wear and tear and improper installation" and not "wind or hail damage." *Id.*,

Plaintiffs disagreed with Allstate's assessment and on or about January 17, 2023, Plaintiffs (through Acts) submitted "an estimate, eagle view, and photo report" to Allstate. *Id.*, ¶ 29. Contrary to Allstate, Acts determined that "significant hail damage totaled the roof" and required "full roof replacement." *Id.* Plaintiffs also requested a reinspection by

Allstate. *Id*., ¶ 30. Allstate, however, "refused to consider anything else provided by Plaintiffs" and reached a "pre-determined conclusion" that it would not pay Plaintiffs' claim. *Id*., ¶ 31.

Plaintiffs then brought this action in state court. Plaintiffs allege claims against Allstate for breach of contract and breach of the duty of good faith and fair dealing. *See* Compl. at 12-18 (Counts I and II). Plaintiffs further allege claims against Defendants for negligent procurement of insurance, constructive fraud and negligent misrepresentation. *See id*. at 18-27 (Counts III and IV).

As Allstate points out, the state-court Petition filed in this case is a "cookie cutter" petition.[3] Notwithstanding that fact, this Court, and multiple other federal district courts

---

[3] Allstate, in its Response, provides a chart identifying cases in which Plaintiffs' attorneys have filed petitions containing allegations similar to those made in this case, including "similar allegations against the agents relating to oral communications and alleged misrepresentations." Def.'s Resp. at 5 and Chart [Doc. No. 25-1]. Plaintiffs, in their Reply, point to allegations in paragraph 72 of the Complaint "which squarely demonstrate the rationale for these similar allegations." Pls.' Reply at 10. Paragraph 72 reads:

> Allstate's captive agents cannot bind a replacement cost policy without first affirmatively representing that the property to be insured satisfies Allstate's underwriting guidelines. Should the property fail to satisfy the guidelines, the policy cannot bind. Accordingly, in every instance wherein an Allstate agent issues a replacement cost policy, the agent must first represent the home meets Allstate's underwriting guidelines. This representation necessarily includes a representation that the home is free from preexisting damage that would violate those same guidelines. Indeed, properties with pre-existing damage, including and especially roof damage, do not qualify under these guidelines and are deemed an unacceptable risk to Allstate. Had Owens not represented Plaintiffs' Insured Property met Allstate's underwriting guidelines, the Policy would not have been issued.

Compl., ¶ 72. Plaintiffs contend "uniform training requiring uniform representations to policyholders results in similar allegations" and is "not suspect, nor is it a basis for the Court to assume fraudulent joinder" as "the similarity is expected." Pls.' Reply at 10. On the record presented, the Court agrees, for purposes of the fraudulent joinder analysis, that the similarity of allegations alone does not demonstrate a basis upon which the Court should find fraudulent joinder.

within the state of Oklahoma have rejected claims of fraudulent joinder on substantially similar allegations made in support of virtually identical claims for relief.[4]   Although Allstate points to a few cases in which a single district judge has found fraudulent joinder, the Court finds those cases are not persuasive.[5]  For the reasons that follow, the Court finds Allstate has failed to meet its heavy burden of establishing fraudulent joinder and, therefore, remands this matter to state court.

## III.   <u>Governing Standard</u>

Federal courts are courts of limited jurisdiction, and the party seeking to invoke federal jurisdiction bears the burden of proving the exercise of such jurisdiction is proper. *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 946-47 (10th Cir. 2014).  A defendant may remove a civil action from state court to federal court when the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a).

Original jurisdiction based on diversity exists where no plaintiff and no defendant are citizens of the same state and the amount in controversy exceeds $75,000 (exclusive of interest and costs). *See* 28 U.S.C. §§ 1332(a), 1441(b)(1); *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).  In addition to the requirements of original jurisdiction, 28 U.S.C. § 1441(b)(2) sets forth the "forum defendant rule," and prohibits a defendant from removing a case on the basis of diversity jurisdiction if any "properly joined and

---

[4] *See, e.g., Ervin v. Herb Weaver Ins. Agency, Inc.*, No. 22-935-SLP, 2022 WL 22839581 (W.D. Okla. Dec. 28, 2022); *see also* Pls.' Mot. at 18, 32 n. 4 (citing cases); Plaintiffs' Notices of Supplemental Authority [Doc. Nos. 27, 28 and 29].

[5] *See, e.g.*, Def.'s Resp. at 23 (citing *Marino v. State Farm*, Case No. CIV-22-885-HE, W.D. Okla., Order denying remand, Exhibit 3 to Allstate's Notice of Removal).

served" defendant is a citizen of the state in which the state-court action was brought. 28 U.S.C. § 1441(b)(2).

If, however, a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction, such fraudulent joinder does not prevent removal.  In such cases, the fraudulently joined defendant is ignored for the purpose of assessing complete diversity. *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (citing *Smoot v. Chicago, Rock Island & Pac. R.R. Co*., 378 F.2d 879, 881-82 (10th Cir. 1967)); *see also Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) ("When [fraudulent joinder] occurs, the district court disregards the fraudulently joined non-diverse party for removal purposes.").

The removing defendant faces a heavy burden of proving fraudulent joinder and all factual and legal issues are resolved in the plaintiff's favor.  *Dutcher*, 733 F.3d at 988.  To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts; or (2) the plaintiff's inability to establish a cause of action against the non-diverse defendant in state court.  *Id*.[6]

The court's objective in determining whether the plaintiff has no cause of action against the alleged fraudulently joined defendant is neither to "pre-try the merits of the plaintiff's claims" nor to "believe whatever the plaintiff says in the complaint."  *Brazell*, 525 F. App'x at 881.  As the Tenth Circuit has explained: "[u]pon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available."  *Dodd v. Fawcett Publ'ns Inc*., 329

---

[6] Allstate's Response to Plaintiff's Motion focuses on the second prong – Plaintiffs' inability to establish a cause of action against Owens in state court.

F.2d 82, 85 (10th Cir. 1964) (citations omitted); *Smoot*, 378 F.2d at 882 (same). But "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." *Id.* "This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592 at * 2 (10th Cir. April 14, 2000) (unpublished op.); *see also Dutcher*, 733 F.3d at 988 (the question of fraudulent joinder is not to be confused with whether "plaintiff have stated a valid claim" against the allegedly fraudulently joined defendants); *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (If there is "a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant" then the case must be remanded.).

## IV.  Discussion

Plaintiffs move for a remand arguing that Owens' liability for negligent procurement, constructive fraud and negligent misrepresentation "all sound in an agent's duties to its insured." *See* Pls.' Mot. at 18 (citing cases); *see also Swickey v. Silvey Cos.*, 979 P.2d 266, 269 (Okla. Civ. App. 1999) (recognizing that "[a]n agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss"). And Plaintiffs articulate the various duties owed

to them and point to the allegations of the Complaint demonstrating a breach of those duties and resulting harm.

Specifically, Plaintiffs allege Owens made misrepresentations to induce Plaintiff into purchasing a replacement cost policy.  Those misrepresentations included telling Plaintiffs that their roof met all underwriting requirements and that there was nothing about the condition of the roof that would exclude coverage or render the roof ineligible for the replacement cost coverage in the event of any weather-related event.   Plaintiffs allege Owens failed to accurately relay to Plaintiffs the nature and character of their insurance, whether on his own initiative or in response to Plaintiffs' inquiries.

Under Oklahoma law, a duty to speak may arise from a partial disclosure.  *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1195 (10th Cir. 1994) (the law imposes a duty to speak from a partial disclosure because "the speaker is under a duty to say nothing or to tell the whole truth" (citation and internal quotation marks omitted)); *Uptegraft v. Dome Petroleum Corp.*, 764 P.2d 1350,1353-54 (Okla. 1988) ("Although a party may keep absolute silence and violate no rule of equity, yet, if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to disclose the whole truth.").  Plaintiffs' allegations support a duty to speak by Owens.

And Plaintiffs' allegations support the elements of a negligent misrepresentation and constructive fraud claim against Owens.  *See* Okla. Stat. tit. 15, § 59 (Constructive fraud consists of "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to

his prejudice, or to the prejudice of any one claiming under him[.]").  Here, Plaintiffs have sufficiently alleged a breach of Owens' duty.  Plaintiffs allege Allstate denied their claim because any loss was caused by pre-existing damage to the roof and, therefore, was not covered.  And Plaintiffs further allege this denial was contrary to Owens' representations that all underwriting requirements had been met and that there were no preexisting issues with the roof that would limit or restrict coverage.  Additionally, Plaintiffs have sufficiently alleged Owens benefitted from the breach and Plaintiffs were prejudiced by the breach as Plaintiffs purchased the policy from Owens, but the policy did not provide the coverage as expected or requested.

With respect to Plaintiffs' negligent procurement claim, Allstate contends that because Plaintiffs obtained a policy that provided full replacement-cost coverage, and because Owens procured that policy for them, he could not have negligently procured insurance.  But that argument ignores that Plaintiffs asked for very specific coverage, for which they paid an increased premium.  And to qualify for that specific coverage, Owens had to verify that the roof was in proper condition to satisfy Allstate's calculation guidelines.

To support fraudulent joinder, Allstate further relies on the Affidavit of Robert Judson Owens III, submitted in support of Allstate's Notice of Removal.  *See* Owens Aff. [Doc. No. 1-4].  In his Affidavit, Owens states only that certain allegations of the Complaint are "false" without any further factual support.  The Court finds the Affidavit is insufficient to demonstrate that Plaintiffs' claims are "false," *see* Def.'s Resp. at 27, or that Plaintiffs have no possibility of recovery against Owens.

Having reviewed the record and in light of the heavy burden faced by Allstate, the Court concludes Allstate has failed to show fraudulent joinder.[7]   As set forth, there is a possibility that Plaintiffs could establish Owens agreed to procure specific insurance coverage, failed to do so through partial or incomplete disclosures, Owens benefitted from that breach and Plaintiffs were prejudiced because the insurance they purchased did not provide the coverage as expected or requested.

## V.   **Conclusion**

On the record presented, Allstate has not met its heavy burden to show with complete certainty that Plaintiffs cannot prevail on their claims against Owens. Accordingly, Owens cannot be ignored for purposes of assessing complete diversity and a remand is proper because the Court lacks subject matter jurisdiction.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Remand [Doc. No. 24] is GRANTED.  This action is remanded to the District Court of Grady County, State of Oklahoma.  The Clerk of Court is directed to take all actions necessary to effect the remand.

---

[7] A remand is required if Plaintiffs can establish Owens could be held liable on any of the theories of liability set forth in the Complaint.  Plaintiffs need not establish all theories of liability against Allstate to prevail.  *See Nerad*, 203 F. App'x at 913 (10th Cir. 2006) ("[I]n cases where fraudulent joinder is claimed . . . the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."); *see also Yeaman v. Hillerich & Bradsby Co.*, No. CIV-09-981-F, 2009 WL 10702127 at *2 (W.D. Okla. Dec. 21, 2009) (unpublished op.) ("Remand is required if any claim against the non-diverse defendant is possibly viable.").

IT IS SO ORDERED this 23rd day of July, 2024.


SCOTT L. PALK
UNITED STATES DISTRICT JUDGE